ALBERT L. SHEETZ, Claimant-Appellee, *v.* MARY MORGAN, Ex'x of the Estate of Samuel Morgan, Deceased, Appellant.

*Second District   No. 80-415*

Opinion filed July 28, 1981.

Richard G. French, Timothy G. Keating, and Thomas F. Lucas, all of French and Rogers, of Chicago, for appellant.

Gerald B. Mullin, William L. Kabaker, and Robert T. O'Donnell, all of Epton, Mullin, Segal & Druth, Ltd., of Chicago, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

On January 7, 1977, Dr. Albert Sheetz (claimant) filed a claim against the estate of attorney Samuel Morgan (estate) for breach of contract, alleging that Morgan while acting as claimant's attorney neglected to file certain "security statements" in connection with the preparation of an equipment lease, resulting in a loss of property to claimant. On April 4, 1977, the claim was dismissed by the trial court. Subsequently, this court issued an order under Supreme Court Rule 23 (Ill. Rev. Stat. 1979, ch. 110A, par. 23) reversing the trial court. Following remand, the claimant moved for summary judgment on the issue of liability only, which was granted by the trial court in November 1979. Following further hearing on the issue of damages, the court awarded claimaint $97,650 as a seventh-class claim against the estate. The estate's motion for rehearing was denied, and this appeal followed.

The following facts were alleged in the motion for partial summary judgment. Samuel Morgan was an attorney engaged in the general practice of law in Chicago in 1974. Just prior to December 19, 1974, claimant requested Morgan to prepare a fixture and equipment lease. Morgan agreed to prepare such a document and also agreed "to do all other acts necessary to complete the lease and protect claimant's property." Morgan prepared the lease, but did not file financing statements. In October 1975, claimant's lessee filed bankruptcy proceedings and was discharged in bankruptcy. Claimant filed a petition in bankruptcy court to reclaim the leased property, but the claim was disallowed by the court, which had interpreted the lease to be a secured sale subject to the filing provisions of article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*). As a result of the failure to file financing statements, claimant alleged he suffered a loss of all the equipment and sought damages therefor.

On July 17, 1979, the estate sought leave to file a late jury demand, but that request was denied by the trial court. Shortly thereafter, partial summary judgment was entered for the claimant allowing the claim and, subsequently, after a hearing on damages, the claimant was awarded $97,650. The estate presents four issues for resolution by this court:

(1) whether the court erred in entering summary judgment for the claimant absent expert testimony;

(2) whether the claim against the estate should have been dismissed for failure to state sufficiently the nature of the claim;

(3) whether the court erred in its assessment of damages;

(4) whether the court abused its discretion in refusing to permit the estate to file a late jury demand.

## I

■■ Claimant argued, and the trial judge agreed, that expert testimony was unnecessary in this case, and that Morgan's failure to file financing statements constituted malpractice as a matter of law. We disagree.

Summary judgment is only appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) The purpose of summary judgment is not to try issues of fact, but to determine whether any genuine issues of fact exist. (*Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97; *McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) Summary judgments are to be granted with great caution (*Joiner v. Benton Community Bank* (1979), 76 Ill. App. 3d 871, 395 N.E.2d 691) and only where the moving party's right to such a remedy is clear and free from doubt. (*Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964; *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 374 N.E.2d 1302.) Such is not the case here, especially in light of the total absence of expert testimony.

Claimant cites *Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 404 N.E.2d 516, for the proposition that malpractice suits based on a failure to file a financing statement may be disposed of by summary judgment without expert testimony. While the reviewing court affirmed the summary judgment, it is important to point out that in *Practical Offset, Inc.*, an expert's affidavit was submitted by plaintiff on the issue of standard of care. Also, and more importantly, the transaction involved therein was clearly and indisputably a secured sale subject to article 9 of the U.C.C. The agreement to sell certain business assets between the plaintiff client and the other party to the contract specifically provided that a promissory note would be secured by a security agreement in the form approved by counsel (defendant therein) together with a proper financing statement for filing under the U.C.C. and such were, in fact, executed on the date of closing. The defendant attorney drafted the financing statement, but simply failed to file it because he relied on opposing counsel to do so.

In discussing the standard of care for an attorney, the court quoted at length from *Schmidt v. Hinshaw* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559:

"The law is well settled that an attorney is liable to his client for

damages only when he fails to exercise a reasonable degree of care and skill, and the law distinguishes between negligence and mere errors of judgment. [Citations.] The question of whether an attorney has exercised a reasonable degree of care and skill is one of fact [citation], and in Illinois the standard of care against which the attorney's conduct will be measured must generally be established through expert testimony. [Citations.] However, where 'the negligence is so grossly apparent * * * that a layman would have no difficulty in appraising it' [citation] * * *, as where the record discloses such an obvious, explicit, and undisputed breach of the attorney's duty of care as letting the statute of limitations run, expert testimony as to the applicable standard of care will not be required. [citations]" 75 Ill. App. 3d 516, 522. (83 Ill. App. 3d 566, 571-72, 404 N.E.2d 516, 521; see also *House v. Maddox* (1977), 46 Ill. App. 3d 68, 73, 360 N.E.2d 580, 584.)

In *Schmidt*, which was decided for the defendant attorney on summary judgment, the plaintiff attempted to bring his case without expert opinion relying upon the "common knowledge exception" in order to create an issue of material fact for the jury. In its rejection of that contention under the facts of that case, the reviewing court stated:

"Plaintiff's failure to obtain an expert witness further supports the entry of summary judgment in Hinshaw's favor. The common sense of laymen could hardly be relied upon to provide the requisite standard of care for the drafting of the relatively complex, multidocument transaction involved in this case.

* * *

In short, plaintiff's bare claim that there is an issue of fact as to Hinshaw's negligence and that such issue can be resolved without resort to expert testimony on plaintiff's behalf is completely rebutted by the record, and therefore the trial court's entry of summary judgment in favor of Hinshaw on the negligence portion of the complaint was proper." 75 Ill. App. 3d 516, 523-24, 394 N.E.2d 559.

A similar result was reached in *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586, wherein a summary judgment for defendant was affirmed on appeal on the failure of plaintiff to obtain expert testimony necessary to prove negligence. In its analysis of whether under the facts of that case the plaintiff was required to have the testimony of an expert witness, the court stated:

"In a situation of this type, far from demonstrating negligence as a matter of law, the record shows the need for expert testimony in determining whether or not defendant in the case at bar had exercised a reasonable degree of care and skill with due regard to

the distinction between errors of negligence and of mistaken legal judgment." 68 Ill. App. 3d 781, 786, 386 N.E.2d 586.

■■ While the general rule in Illinois is that testimony of an expert witness with respect to the standard of care owed by the lawyer to the client is required, an exception was formulated where the failure was to comply with the statute of limitations. (*House v. Maddox* (1977), 46 Ill. App. 3d 68, 73, 360 N.E.2d 580.) In the instant case, unlike that situation where an attorney allows the statute of limitations to run, the negligence, if any, is not " 'so grossly apparent * * * that a layman would have no difficulty in appraising it.' " (46 Ill. App. 3d 68, 73, 360 N.E.2d 580, 584; see also *Bonhiver v. Rotenberg, Schwartzman & Richards* (7th Cir. 1972), 461 F.2d 925, 928.) Rather, expert legal testimony is necessary to establish the prevailing standard of care for attorneys in the community in 1974 for the type of services requested of Mr. Morgan and to determine whether Morgan deviated from that standard of care in failing to foresee that a bankruptcy court might treat the "lease" as a sale, requiring compliance with article 9 of the U.C.C. As pointed out by the estate in its brief, there may have been valid tax motives for treating the transaction as a lease rather than a sale. At trial the parties will have an opportunity to explore this possibility further and the trial court, or the jury as the case may be, will be in a position then to make a determination as to whether there were valid tax advantages which could be jeopardized by filing. On the bare record presented to us, we are unable to make such a determination as a matter of law. In addition, the trial judge sitting without a jury cannot use his own independent knowledge of the applicable legal standards as a substitute for expert legal testimony. *Bonhiver v. Rotenberg, Schwartzman & Richards* (7th Cir. 1972), 461 F.2d 925.

Claimant raises, for the first time on appeal, section 9—408 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—408). That section provides:

> "A consignor or lessor of goods may file a financing statement using the terms "consignor,' 'consignee,' 'lessor,' 'lessee' or the like instead of the terms specified in Section 9—402. The provisions of this part shall apply as appropriate to such a financing statement but its filing shall not of itself be a factor in determining whether or not the consignment or lease is intended as security (Section 1—201(37)). However, if it is determined for other reasons that the consignment or lease is so intended, a security interest of the cosignor or lessor which attaches to the consigned or leased goods is perfected by such filing." (Ill. Rev. Stat. 1979, ch. 26, par. 9—408.)

Thus, while, apparently, claimant argued in the trial court that Morgan was negligent in failing to recognize the transaction as a sale subject to

article 9 of the U.C.C., he now argues that Morgan was negligent in failing "to foresee the obvious risk inherent in an equipment lease and to invoke the protection of a statute designed to eliminate such risk * * *."

Again, however, there is no expert legal testimony in the record which would indicate that a reasonably prudent attorney practicing law in that community in 1974 would, in fact, have filed under section 9—408 when preparing an equipment lease of the type involved herein; nor is it self-evident that filing pursuant to section 9—408 under the circumstances presented would have no adverse consequences relative to an I.R.S. tax determination. Expert legal testimony is required to establish whether or not there may be circumstances under which a prudent attorney would not utilize this non-mandatory statutory provision in preparing a lease of the type involved herein.

## II

Next, the estate argues that the claim involved herein should have been dismissed for failure to state sufficiently the nature of the claim, as required by section 18—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 18—2). This issue was presented the first time this cause was before the court on appeal, but we declined to decide it then as we reversed on other grounds.

■■ It is clear that technical legal form is not required in the presentation of claims, and that proceedings in probate court for the allowance of claims are not governed by the technical rules which apply to a formal suit at law. (*In re Estate of Piper* (1978), 59 Ill. App. 3d 325, 327, 375 N.E.2d 477; see also *In re Estate of Weaver* (1954), 3 Ill. App. 2d 448, 452, 122 N.E.2d 599.) All the Probate Act requires is that the claim "be in writing and state sufficient information to notify the representative of the nature of the claim or other relief sought." Ill. Rev. Stat. 1979, ch. 110½, par. 18—2.

■■ The claim involved herein satisfies this requirement. It gives the estate notice of the nature of the claim: that the decedent was an attorney practicing law in Chicago in 1974; that he was retained by claimant to prepare a lease and to "do all other acts necessary to * * * protect claimant's property"; that the decedent prepared the lease but failed to prepare and file U.C.C. financing statements; and that, by reason of this omission, and without any fault of his own, claimant lost title to his property when his lessee declared bankruptcy. Although the claim is captioned "Contract," it seems clear that the substance of the claim is an action in negligence upon an attorney-client contract for performance of legal services. While it may not have survived a motion to dismiss had it been a complaint at law, a claim has been held not to be a pleading within the meaning of section 33 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch.

110, par. 33) and need not be set forth with the particularity required of a pleading. *In re Estate of Piper* (1978), 59 Ill. App. 3d 325, 375 N.E.2d 477.

Furthermore, the cases cited by the estate are inapposite. *Miller v. Schultz* (1977), 53 Ill. App. 3d 721, 368 N.E.2d 1141, *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101, and *Alster v. Chicago Tastee-Freez Corp.* (1966), 76 Ill. App. 2d 388, 222 N.E.2d 274 (abstract), all involve the legal sufficiency of *pleadings* in actions at law; none relate to claims filed in probate. As pointed out above, the law is clear that a claim in probate need not satisfy the technical legal requirements for pleadings at law. (*In re Estate of Engel* (1980), 87 Ill. App. 3d 273, 277, 408 N.E.2d 1134.) Therefore, the estate's motion to dismiss for failure to sufficiently state the nature of the claim was properly denied.

## III

The third argument presented by the estate on appeal is that the trial court erred in the measure of damages it applied to the case. The court awarded claimant $97,650 in damages, which appears to be based solely upon an unsigned, proposed equipment lease. Claimant testified that, but for his inability to reclaim the equipment from the bankruptcy court, the lease would have been executed. We address the issue of damages as it will likely arise again upon remand, if claimant is successful on the merits.

■■ A plaintiff has the responsibility of proving damages to a reasonable degree of certainty. (*Williams v. Board of Education* (1977), 52 Ill. App. 3d 328, 367 N.E.2d 549.) In a legal malpractice lawsuit damages will not be presumed, and the client bears the burden of proving that damages resulted. (See *Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 1012-13, 278 N.E.2d 431.) Obviously, a similar burden is placed upon a claimant in a probate proceeding. Where damages are susceptible to proof in dollars and cents, direct and tangible proof must be offered (*Ralph v. Karr Manufacturing Co.* (1974), 20 Ill. App. 3d 450, 314 N.E.2d 219) and evidence as to damages must not be remote, speculative or uncertain. *Terracina v. Castelli* (1979), 80 Ill. App. 3d 475, 400 N.E.2d 27.

■■ ■ Reviewing the report of proceedings for the February 4, 1980, hearing on damages, it becomes clear that the evidence introduced regarding the proposed lease was insufficient to support the trial court's award of damages and can be characterized appropriately as remote, speculative and uncertain. The measure of damages in this case is the market value of the property at the time and place of the loss. (See *New York, Chicago & St. Louis R.R. Co. v. American Transit Lines, Inc.* (1951), 408 Ill. 336, 97 N.E.2d 264.) The typical method of proving up such damages is by expert appraisal testimony regarding the market value of the equipment, not by introducing an executory lease. (See generally 22 Am. Jur. 2d *Damages* §324 (1965).) While we do not purport to indicate

that this is the only means of proof of damages, clearly the trial court was in error in basing the award of damages solely on the testimony of claimant and his attorney regarding an executory lease.

## IV

The final question which must be addressed is whether the trial court abused its discretion or otherwise erred in denying the estate's motion for leave to file a late jury demand. Section 18—6 of the Probate Act provides in pertinent part:

"Any interested person may demand a jury to try the issue in accordance with the following, otherwise he waives a jury:
\* \* \*

(b) A person opposing a claim or counterclaim must file the jury demand not later than the filing of his answer or other pleading." (Ill. Rev. Stat. 1979, ch. 110½, par. 18—6(b).)

An exception, however, is set out in section 18—6(c):

"\* \* \*. For good cause shown, the court may permit a jury demand to be filed after expiration of the time specified." Ill. Rev. Stat. 1979, ch. 110½, par. 18—6(c).

While the parties address themselves to the issue of whether the trial judge abused his discretion in denying the estate's motion for leave to file a late jury demand, we consider as dispositive of this issue the question of whether the estate's motion to dismiss constitutes an "answer or other pleading" within the meaning of section 18—6(c). If it does not, the estate still had the ability to file a jury demand *as a matter of right* when it sought to do so by leave of court on July 17, 1979.

Nowhere in the Probate Act is the word pleading defined. However, by comparison, a motion to dismiss a pleading which is provided for in section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) raises an objection to a pleading, but is not itself a pleading. Therefore, in the context of the instant case, the estate's motion to dismiss, which alleged the failure of the claim to state a cause of action, is not a pleading and should not bar the estate under section 18—6 of the Probate Act from later filing a jury demand.

■■ We interpret section 18—6 of the Probate Act as allowing a person opposing a claim or counterclaim to file a jury demand as a matter of right not later than the filing of his answer or other pleading *in the nature of an answer*. This construction would also be consistent with section 64(1) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 64(1)), which allows a defendant desirous of a trial by jury to file a demand not later than the filing of his answer. We can perceive no sound reason for the legislature to have intended a different rule in this regard in probate proceedings, and therefore conclude that the phrase "or other pleading"

means a response in the nature of an answer. The motion to dismiss filed herein is not what we consider to be in the nature of an answer; nor does it appear to us that an answer was ever filed by the estate, although an unsigned copy of one appears in the record attached to a motion. Therefore, we conclude that on July 17, 1979, the estate still had a statutory right to file a jury demand. Accordingly, unless it is determined on remand that an answer was in fact filed by the estate before July 17, 1979, the trial court should permit the estate to file its jury demand.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.